

# In the
# Missouri Court of Appeals
## Western District

JASON MICHAEL KYLE SELIG,      )
     )
               **Respondent,**      )      **WD82804**
     )
**v.**      )      **OPINION FILED:  April 21, 2020**
     )
**ROBERT RUSSELL, PROSECUTOR,**      )
**JOHNSON COUNTY CIRCUIT**      )
**COURT, SCOTT MUNSTERMAN,**      )
**SHERIFF, JOHNSON COUNTY**      )
**SHERIFF'S DEPARTMENT,**      )
     )
               **Appellants.**      )

**Appeal from the Circuit Court of Johnson County, Missouri**
The Honorable R. Michael Wagner, Judge

Before Division Two:  Cynthia L. Martin, Presiding Judge, Thomas H. Newton, Judge
and Gary D. Witt, Judge

Jason Selig ("Selig") filed a Petition for Exemption from Sex Offender Registry in

the Circuit Court of Johnson County, naming Johnson County Prosecutor, Robert Russell,

Johnson County Sherriff, Scott Munsterman, and Missouri State Highway Patrol, Director

of the Patrol Records Division, Captain Kyle Marquart,[1] as respondents (collectively the

---

[1] Captain Marquart retired from the Highway Patrol effective January 1, 2019.  He was a party to this action solely in his former official capacity.

"State") seeking a declaratory judgment that he was exempt from registration as a sex offender under both the state and federal sex offender registries. The circuit court granted Selig's petition and the State appeals. The State contends that the circuit court erred in granting Selig's petition because (1) the court failed to consider Selig's independent requirement to register because of his federal registration obligations; (2) registering is a prerequisite to obtaining an exemption; and (3) there was no hearing to determine whether Selig was required to federally register.[2] Selig counters these arguments but also contends that the Rule of Lenity applies to negate any registration requirements. We reverse, in part, and remand for further proceedings.

## Factual and Procedural Background

Selig entered a plea of guilty to the offense of furnishing or attempting to furnish pornographic material to a minor in violation of section 573.040 on February 27, 2019.[3] The facts giving rise to the charges were that he sent photographs of his erect penis to multiple fellow high school students via Snapchat. Following his conviction, on March 1, 2019, Selig filed a Petition for Exemption from Sex Offender Registry ("Petition") seeking a declaratory judgment that he was exempt from registration as a sex offender under both the state and federal sex offender registries. Section 589.400 imposes Missouri's registration requirements on certain offenders convicted of sexual offenses. Selig asserts

---

[2] The State raises these three arguments in a single point relied on. It is multifarious in that it presents three distinct claims of error that should be in separate points relied on. *See State v. Robinson*, 454 S.W.3d 428, 437 n. 6 (Mo. App. W.D. 2015). In general, multifarious points preserve nothing for appellate review and are subject to dismissal. However, because we prefer to decide cases on the merits where appellant's argument is readily understandable--as is the case here--we have elected to exercise our discretion to review the merits of the arguments set forth in the point relied on.

[3] All statutory references are to RSMo 2016 as currently updated, unless otherwise noted.

2

that pursuant to section 589.400.9(2)(c) he was exempt from registering under the Missouri Sex Offender Registry.

The State responded that although Selig may have been exempt pursuant to section 589.400.9(2)(c), he was still required to register pursuant to section 589.400.1(7)[4] which incorporates federal registration requirements into Missouri's registration requirements. Further, the State argued that despite being titled an "exemption" Missouri law requires even those deemed to be exempt to first register and then seek removal from the registration requirements. Because Selig has not registered, the State contends that he may not be granted an exemption. The State filed a Motion to Dismiss for Failure to State a Claim asserting the same grounds ("Motion"). The circuit court held a hearing on the Petition and Motion on May 6, 2019 ("Hearing"). At the Hearing, Selig initially requested the court make two findings: (1) that Selig's conviction did not fall within the federal Sex Offender Registration and Notification Act ("SORNA")[5] and (2) that Selig was exempt under

---

[4] The statute at issue is alternatively referred to both as 589.400.1(6) and 589.400.1(7) by the parties. Section 589.400.1(2) was both amended and removed, effective August 28, 2018. When published, the Revised Statutes included the amended subsection. Selig contends that subsection 589.400.1(2) should have been removed and the following subsections renumbered, resulting in subsection 589.400.1(7) becoming subsection (6). There is no dispute as to the language of this subsection, only as to its application to these facts. For clarity, the subsection at issue states:

1. Section 589.400 to 589.425 shall apply to:

****

(7) Any person who is a resident of this state who has, since July 1, 1979, been or is hereafter adjudicated in any other state territory, the District of Columbia, or foreign country, or under federal, tribal, or military jurisdiction for an offense which, if committed in this state, would constitute an offense listed under section 589.414, or has been or is required to register in another state, territory, the District of Columbia, or foreign country, or has been or is required to register under tribal, federal, or military law; or

For constancy, we will refer to is as section 589.400.1(7), as it appears in the printed Missouri Revised Statutes.
[5] 34 USC §§ 20901-20920.

Missouri's Sex Offender Registration Act ("MO-SORA").[6] During the course of the Hearing, however, Selig withdrew his request for a finding regarding his federal SORNA obligations, instead asking solely for a determination under the state MO-SORA, arguing that section 589.400.9(2)(c) exempted him from all registration requirements. The State argued that Selig's obligations under MO-SORA could not be determined without first determining his SORNA obligations. At the Hearing, the State contended that the circuit court needed to hold an additional hearing at which the parties could submit evidence regarding whether Selig was required to register under the provisions of SORNA. The State reiterated this argument following Selig's withdrawal of his request for a SORNA determination arguing that Selig was still subject to registration due to his federal obligations.[7]

The court entered judgment on May 9, 2019 ("Judgment"). The Judgment stated that: "The State's Motion to Dismiss is denied. Pursuant to §589.400.9(2)(c) RSMo., petitioner is exempt from the sex offender registration requirements generally set forth in §589.400 RSMo." The Judgment made no findings as to Selig's federal SORNA obligations.

This appeal followed.

**Standard of Review**

This Court will uphold the judgment of the trial court unless "it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or

---

[6] Sections 589.400 to 589.425.
[7] In the transcript the State referenced "subparagraph 8" but it clear from his argument his intent was to reference subsection (7).

4

applies the law." *Doe v. Isom*, 429 S.W.3d 436, 439 (Mo. App. E.D. 2014) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

## Discussion

As noted above, the State brings one point on appeal which is actually three separate claims of error. The State alleges that the circuit court erred in granting Selig's Petition because the court's statement in the Judgment that Selig was exempt from registration as "generally set forth in [section] 589.400" was an error of law. The State contends that Selig is not exempt because of his independent federal registration obligation or, at a minimum, the circuit court was required to conduct a hearing on whether Selig has registration requirements pursuant to SORNA before declaring him generally exempt under MO-SORA. Further, the State alleges that the circuit court erred in denying its Motion because Selig was required to register prior to filing his Petition for exemption. Since he has yet to register, the State contends the Petition was not ripe for review.

## I. Registration obligation under SORNA

There are two registration laws at issue in this case. Missouri governs and maintains its own sex offender registry pursuant to the provisions of MO-SORA, setting forth the offenses which give rise to a requirement to register as a sex offender. The federal government does not maintain its own registry, separate from those registries maintained by states. SORNA establishes requirements for the registration of sex offenders that each state must comply with in order to receive certain federal funds.

> Since 1994, federal law has required States, as a condition for the receipt of certain law enforcement funds, to maintain federally compliant systems for sex-offender registration and community notification. In an effort to make

5

these state schemes more comprehensive, uniform, and effective, Congress in 2006 enacted the Sex Offender Registration and Notification Act (SORNA or Act) as part of the Adam Walsh Child Protection and Safety Act, Pub.L. 109–248, Tit. I, 120 Stat. 590.

*Carr v. United States*, 560 U.S. 438, 441 (2010). Missouri has recognized that Congress intended SORNA to be uniformly implemented by the states.

> Congress' intent to establish a uniform national sex-offender registration system is made explicit in SORNA's first section, which contains the following declaration of purpose: "[i]n order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators against the victims listed below, *Congress in this chapter establishes a comprehensive national system* for the registration of those offenders." 42 U.S.C. § 16901 (emphasis added).

*Doe v. Keathley*, 344 S.W.3d 759, 764 (Mo. App. W.D. 2011) (holding that, for the purpose of registration requirements, the definition of "convicted" must be governed by federal law).

The interplay between the requirements of SORNA but also the requirements of MO-SORA can be seen within section 589.400. Section 589.400 includes detailed lists of who is required to register as a sex offender in Missouri and includes several groups of persons and particular crimes which are exempt from registration requirements. However, section 589.400.1(7) includes a general provision that requires registration for any person who "has been or is required to register under tribal, federal, or military law[.]" "[T]he Missouri Supreme Court held as follows: If a Missouri resident is a 'sex offender' pursuant to the terms of SORNA, SORNA imposes upon such a person an 'independent, federally mandated registration requirement' which triggers the individual's duty to register in Missouri pursuant to section 589.400.1(7) of [MO-SORA]." *Doe v. Neer*, 409 S.W.3d 451,

6

455 (Mo. App. E.D. 2013).[8]  Thus, regardless of the other terms of MO-SORA, section 589.400.1(7) acts as an "independent" requirement for registration.

Such an independent requirement is necessary because SORNA maintains compliance of states with SORNA's registration requirements by tying federal funds to substantial compliance with the federal act.  34 U.S.C. § 20927(a) ("For any fiscal year after the end of the period for implementation, a jurisdiction that fails, as determined by the Attorney General, to substantially implement this subchapter shall not receive 10 percent of the funds that would otherwise be allocated for that fiscal year to the jurisdiction under . . . the Omnibus Crime Control and Safe Streets Act of 1968 . . . .").  Contrary to Selig's assertions, this is not a situation in which this Court is acting to enforce SORNA.  Instead, the Missouri Legislature has chosen to integrate the registration requirements of SORNA into MO-SORA through section 589.400.1(7).  The failure to do so would risk Missouri's receipt of certain federal funding and the Missouri Legislature enacted provisions protecting that revenue source.

In this case, the State agrees that Selig is exempt from registering under the provisions of section 589.400.9(2)(c) because Missouri statutes generally exempt from registration a conviction for the offense that he was convicted of committing.  Irrespective of that exemption, however, the State argues that Selig was still required to register under section 589.400.1(7) because the federal government does require registration for the offense he was convicted of committing.  Selig was convicted of furnishing pornography

---

[8] This provision of MO-SORA has remained substantially similar since *Doe*, the relevant "has been or is required to register under tribal, federal, or military law" language has remained unchanged.

7

to a minor. This offense is specifically exempted from registration under section 589.400.9(2)(c). However, under SORNA, the federal government requires registration of persons convicted of a "specified offense against a minor" which includes "[a]ny conduct that by its nature is a sex offense against a minor." 34 U.S.C. § 20911(7)(I). This provision of SORNA was drafted by Congress to be intentionally broad to include as many offenses against children as possible within SORNA's registration requirements. *Wilkerson v. State*, 533 S.W.3d 755, 758 (Mo. App. W.D. 2017) (citing *United States v. Dodge*, 597 F.3d 1347, 1355 (11th Cir. 2010) (en banc)). Pursuant to section 589.400.1(7), if an offender is required to register under any of the provisions of the federal SORNA act, they are also required to register under the state MO-SORA act.

Selig contends that this system creates an illogical result, contending that the legislature could not have intended to expressly exempt Selig's offense from registration but also require registration for that same offense under a general provision incorporating the federal act. Instead, Selig asserts the statutory interpretation theory that "[w]hen the same subject matter is addressed in general terms in one statute and in specific terms in another, the more specific controls over the more general." *Lane v. Lensmeyer*, 158 S.W.3d 218, 225 (Mo. banc 2005). Selig argues that because subsection 589.400.9(2)(c) specifically exempts Selig's offense, it should control over subsection 589.400.1(7) which generally requires registration of crimes required by SORNA. We disagree. Where federal funding is tied to substantial compliance with SORNA registration requirements, it is not unreasonable that Missouri would adopt a "catch-all" provision allowing Missouri to fully comply with the registration requirements of SORNA without having to amend MO-SORA

8

every time the federal government chose to amend SORNA. As fully discussed below, interpreting Missouri's specific exemptions to take precedence over SORNA general requirements is contrary to previous Missouri court's interpretation of section 589.400.1(7) and risks Missouri's federal funding.

While we agree with Selig that this dual system has, in some cases, the potential to impose more stringent registration requirements on an offender than Missouri would have otherwise imposed, this result has been previously examined and explained. In *Wilkerson v. State*, an offender filed a petition seeking to be removed from Missouri's sex offender registry because she met all of the requirements for removal under the then applicable sections 589.400.8 and .9, RSMo 2016. 533 S.W.3d at 756. The state opposed Wilkerson's petition arguing that Wilkerson was ineligible for removal because SORNA still imposed an independent federal obligation to register regardless of the fact that Wilkerson met MO-SORA's requirements for removal from registration. *Id*. at 757. This Court noted:

> The complicating factor in this case, however, is that [section] 589.400.1(1) is not the sole source of Wilkerson's registration obligation. Instead, she was *also* required to register pursuant to [section] 589.400.1(7), because she "has been or is required to register under ... federal ... law." The federal SORNA statute specifies that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides." 34 U.S.C. § 20913(a). A "sex offender" is "an individual who was convicted of a sex offense." 34 U.S.C. § 20911(1). The definition of a "sex offense" includes "a criminal offense that is a specified offense against a minor." 34 U.S.C. § 20911(5)(A)(ii). A "specified offense against a minor" includes, among other things, "criminal sexual conduct involving a minor," and "[a]ny conduct that by its nature is a sex offense against a minor." 34 U.S.C. §§ 20911(7)(H), (I).

*Id.* at 758. The Court held that although Wilkerson was otherwise eligible for removal from Missouri's registration list under section 589.400.1(1), MO-SORA still mandated

9

registration under section 589.400.1(7). *Id*. at 761. In fact, because section 589.400.1(7) requires registration for any offender who "has been or is required to register under tribal, federal, or military law," Missouri has in effect created a lifetime registration requirement for anyone who has ever been required to register under SORNA. *Id.*; *James v. Mo. State Highway Patrol*, 505 S.W.3d 378 (Mo. App. E.D. 2016) ("Petitioner's status as a SORNA sex offender triggers [MO-SORA]'s lifetime registration requirement."). Even if an offender is eligible for removal under SORNA and under MO-SORA, they will still be a person who "has been" required to register under SORNA and thus required to register pursuant to section 589.400.1(7) for their lifetime. *Doe v. Toelke*, 389 S.W.3d 165, 167 (Mo. banc 2012).

As is clear from the discussion above, in *Wilkerson*, the offender had a registration requirement pursuant to 589.400.1(1), "for the offense," but was also required to register under section 589.400.1(7) pursuant to her federal registration obligations. The court found that, regardless of being eligible for removal from registration "for the offense," Wilkerson had an ongoing requirement to register under 589.400.1(7) due to her separate federal obligation to register. The present case is similar. Although section 589.400.9(2) exempts Selig from registering for the offense of "furnishing pornographic materials to minors," like *Wilkerson*, regardless of his registration requirements "for the offense," he potentially has independent registration requirements pursuant to section 589.400.1(7) because of a separate federal obligation to register.

This Court noted in *Wilkerson* that such a result is troubling. However, as fully discussed in that opinion, the alternative would be to allow Wilkerson to obtain release

10

from registration after two years, even though SORNA requires registration for fifteen years. *Wilkerson*, 533 S.W.3d at 761. This result would "arguably be failing to 'substantially implement' SORNA's provisions, endangering Missouri's funding." *Id.* The court found that there was "no indication that the General Assembly intended not to fully discharge the State's obligations under SORNA, by allowing offenders like Wilkerson to obtain early release from their registration obligations." *Id.*

A similar result was reached by the Southern District of this Court in *Khatri v. Trotter*, 554 S.W.3d 482, 485 (Mo. App. S.D. 2018). In *Khatri*, an offender sought removal from Missouri's registry following the expiration of his mandatory federal registration period. *Id.* at 483. The circuit court granted his petition for removal but the court in *Khatri* reversed and remanded with instruction to have Khatri placed back on the registry. *Id.* at 485. The court held: "Once again, despite the legislative intent that there be a method to be removed from the registry, we cannot affirm the judgment because of the requirement under [MO-SORA] that a person must register on the Missouri registry if the person has been required to register **at any time** on the federal registry." *Id.* at 483 (internal footnote omitted). The court specifically relied on and reiterated the holdings of *Wilkerson* and *James*. *Id*. at 485.

Selig counters that *Wilkerson* and the other cases discussing the dual requirements of MO-SORA are no longer of precedential value because the Missouri legislature drastically changed MO-SORA in 2018. Selig specifically points to the fact that the legislature added the list of crimes exempt from registration in subsection 589.400.9 as well as restructured the time periods for requesting removal from the registry to a tiered

11

system under 589.401. Selig argues that we must now construe MO-SORA differently because, otherwise, the addition of the exemptions of section 589.400.9 would have no effect. "When the legislature amends a statute, it is presumed that its intent was to bring about some change in the existing law." *Wilson v. Progressive Waste Solutions of Mo, Inc.*, 515 S.W.3d 804, 810 (Mo. App. E.D. 2017). "We presume the legislature acted with a full awareness and complete knowledge of the present state of the law, including judicial and legislative precedent." *Id.* We never construe a statute in a way "that would moot the legislative changes because the legislature is never presumed to have committed a useless act." *Id.* However, it is important to note that while making a number of large substantive changes to the statute, the legislature made no changes to the language of section 589.400.1(7) which has been fully discussed in prior case law as creating a lifetime registration requirement if a person has ever met the registration requirements of SORNA. Section 589.400.1(7) still requires that a person must register if he or she "*has been* or is required to register under tribal, federal, or military law[.]" (emphasis added). The legislature was aware of the Court's interpretation of this phrase and yet chose to make no changes to this provision.

Additionally, although the amendments may have no effect as applied to Selig--an issue still yet to be decided--it does not follow that the amendments had no effect in all cases. There still may be those persons whose offense is exempt pursuant to section 589.400.9, who do not otherwise have SORNA registration requirements, and are thus exempt from all registration under MO-SORA.

We do not find this case distinguishable from the prior precedent interpreting this provision. Although this case involves a request for a declaration of an exemption, rather than a request for removal, our statutory interpretation remains the same. Missouri courts must consider, determine, and apply the registration requirements of SORNA through application of section 589.400.1(7) regardless of the other terms of MO-SORA. This is consistent with the language of the statute and to do otherwise could threaten Missouri's federal funding. Just as in *Wilkerson*, we see no indication that the General Assembly intended such a result and the General Assembly is the body tasked with making such a policy determination. The Judgment of the circuit court is correct that Selig is exempt from registration under section 589.400.9(2)(c), but it must also determine whether Selig has an obligation to register under SORNA before it may declare him to be also exempt under all of section 589.400. In *Wilkerson*, this Court considered whether the offender was required to register under SORNA because her underlying conviction involved a sexual offense against a minor and, finding that it was, remanded to the circuit court with specific instruction to dismiss Wilkerson's petition. In this case, however, this Court lacks a factual record regarding the underlying offense necessary to determine whether Selig's offense requires SORNA registration. Thus remand is required for further development of the underlying facts of the offense for which Selig was convicted and for the circuit court to make such a determination.

## II. Rule of Lenity

Selig further argues that, even should this Court find that there is an independent registration requirement under SORNA, regardless of an exemption under MO-SORA,

13

Selig should still be exempt from registering under the Rule of Lenity. The Rule of Lenity mandates that "ambiguity in a penal statute will be construed against the government or party seeking to exact statutory penalties and in favor of persons on whom such penalties are sought to be imposed." *J.S. v. Beaird*, 28 S.W.3d 875, 877 (Mo. banc 2000) (citing *State v. Stewart*, 832 S.W.2d 911, 913 (Mo. banc 1992)). The Supreme Court found that although sex offender registration "is not necessarily punitive," failure to register results in criminal consequences, and the Rule of Lenity is applicable. *Id.* However, the rule "applies to interpretation of statutes only if, after seizing everything from which aid can be derived, [the court] can make no more than a guess as to what the legislature intended." *State v. Liberty*, 370 S.W.3d 537, 547 (Mo. banc 2012).

While the statutory result of the interplay between section 589.400.1(7) and section 589.400.9(2)(c) may be inconsistent in many factual situations, it is not ambiguous. Just as the cases above suggest, it is troubling that the Missouri legislature has created a scheme in which it requires lifetime registration for persons who would otherwise qualify for removal or exemption. But, the result is not ambiguous or the legislative intent undiscernible. This is a policy decision for the legislature to determine, not the courts. Missouri has a dual registration scheme and has clearly established a system in which a person who may otherwise be exempt or qualify for removal under Missouri law must still register for their entire lifetime if he or she is required or ever has been required to register under SORNA. Courts have made this interpretation clear and the General Assembly has chosen not to amend the statute to address this seeming inconsistency. In this case, it is not yet determined that Selig is or ever has been required to register pursuant to section

14

589.400.1(7) because his SORNA obligations have not yet been adjudicated and that determination must be established before a court can grant him the declaratory relief he has requested. For these reasons we decline to apply the Rule of Lenity to these facts.

### III. Registration Prior to Exemption

Because it is relevant to the case on remand, and if the State's argument is well taken then Selig's petition is premature, we must also address the State's final argument on appeal that the circuit court erred in dismissing the Petition because Selig's request for exemption cannot be considered until he first registers as an offender. The State argues that even though Selig requests a declaration of "exemption" the proper procedure to raise this claim is to register as a sex offender and then petition the court for removal from the registration requirements. We disagree. The term "exempt" means "not subject to an authority or jurisdiction" or "free or released from some liability to which others are subject: excepted from the operation of some law or obligation." MERRIAM-WEBSTER DICTIONARY, 795 (3rd ed. 1993).

Section 589.400 distinguishes between offenses eligible for removal from the registry and those offenses which are exempt from the requirement to register. It establishes those offenses which are exempt in section 589.400.9 and states that listed persons "shall be exempt from registering as a sexual offender under the petition to the court of jurisdiction under section 589.401[.]" Although inartfully drafted, section 589.401 draws a distinction between those petitioning for removal from the registry and those petitioning for an exemption from the registry. The majority of section 589.401 addresses a petition for removal. Subsection 589.401.8 addresses exemptions stating: "The person

15

seeking removal *or exemption* from the registry shall provide the prosecuting attorney in the circuit court in which the petition is filed with notice of the petition." (emphasis added). This suggests that the legislature was aware of the distinction between the two requests and its decision to not include those seeking exemption from the other subsections and requirements of section 589.401 was intentional.[9]

By its very definition a request for exemption is different and distinct from a request for removal. They are not treated the same by MO-SORA, and it is illogical to force a person who is otherwise claiming to be exempt from any requirement to register be forced to register before they can even request to be exempt. Although the State notes that in addition to the clear exemption under MO-SORA, as fully discussed above, Selig must also establish that he is exempt under SORNA to avoid registration requirements. We see no reason to treat a request for exemption under SORNA differently from the procedure for determining an exemption under MO-SORA. Selig is not arguing that he is entitled to be removed from the registry because he has met his federal obligations under SORNA to be removed from the registry, he is arguing that his offense never fell within the bounds of SORNA. Thus, he is still only requesting a declaration of exemption, not a judgment of removal.

We find that Selig's Petition is ripe for review upon remand to the circuit court.

---

[9] The State further argues that Selig is in the unenviable position of risking a felony conviction for failure to register within three days under section 589.400.2 should the circuit court deny his Petition. We make no findings regarding the legitimacy of this argument, and instead hold only that registration is not required prior to filing a petition for exemption from registration. Whether it would be prudent for an offender to register while awaiting a court's ruling on his or her petition for exemption is not currently before this Court.

16

## Conclusion

While it is troubling that Selig may be expressly exempt from registration under section 589.400.9(2)(c) and yet have lifetime registration requirements pursuant to section 589.400.1(7), that is the current status of law as the legislature has enacted it. This Court's opinion in *Wilkerson* fully set forth the effects and possible inequality of this statutory scheme before the legislature most recently amended the statute and the General Assembly did not amend the provisions of section 589.400.1(7) creating lifetime registration requirements. Thus, we can only presume that the legislature intended this result. For the reasons stated above, we reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion to determine what if any obligations Selig has to register under SORNA and thus register pursuant to section 589.400.1(7).

_____
Gary D. Witt, Judge

All concur

17